IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | |
| | ) | DEFERRED PROSECUTION |
| COLUMBIA FARMS | ) | AND GLOBAL SETTLEMENT |
| | ) | AGREEMENT |
| | ) | |

Defendant COLUMBIA FARMS, INC. ("Columbia Farms"), a South Carolina corporation, by its undersigned attorneys, pursuant to authority granted by its Board of Directors, the United States Department of Justice ("Department of Justice"), and the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") enter into this Deferred Prosecution Agreement ("Agreement"), which shall apply to Columbia Farms, Inc. and all its affiliates and subsidiaries, including but not limited to its affiliate House of Raeford Farms, Inc., a North Carolina corporation, and its affiliate House of Raeford Farms of Louisiana, LLC, a Louisiana limited liability company (collectively "Company").

This Agreement resolves an investigation by ICE and the Department of Justice, including but not limited to the United States Attorney's Office for the District of South Carolina ("USAO DSC"), regarding hiring practices at Company facilities and specifically regarding alleged criminal conduct by two management employees of Columbia Farms in Greenville, South Carolina. The ICE investigation focused on

- 1 -

allegations concerning the hiring and continued employment of unauthorized workers.

The Department of Justice and the Company, enter into this Agreement in settlement of Columbia Farms' potential corporate criminal liability for conduct by and through two of its management employees associated with the hiring and continued employment of unauthorized workers at the Columbia Farms Greenville, South Carolina plant ("Greenville Plant"), located at 1354 Rutherford Road, Greenville, South Carolina 29609, as set forth in case number 6:08-683, beginning in or about 2000 and continuing through October 7, 2008 ("relevant time period"). This agreement further resolves all potential corporate criminal, civil, or administrative (the term "administrative" refers to the Notice of Intent to Fine (NIF) process and the administrative fines set forth in 8 U.S.C. § 1324a), liability for conduct which occurred at the Columbia Farms Columbia, South Carolina plant ("Columbia Plant"), located at 441 Sunset Boulevard, West Columbia, South Carolina 29169, or any other Company facility or plant during the relevant time period and continuing throughout the date of the execution of this agreement. This agreement does not address or contemplate any issue regarding debarment and future government contracts.

ICE and the Department of Justice investigated violations of several federal criminal laws including, but not limited to, unlawful employment of unauthorized workers and the making of false statements as contained in Title 8, U.S.C. 1324a(a)(1)(A), 1324a(a)(2), and Title 18 U.S.C. 1001(a). The parties to this agreement

are:

Columbia Farms, with plants located in Greenville, South Carolina, and Columbia, South Carolina, in the District of South Carolina, licensed to do business in South Carolina, and all its affiliates and subsidiaries, including but not limited to its affiliate House of Raeford Farms, Inc., a North Carolina corporation, and its affiliate House of Raeford Farms of Louisiana, LLC, a Louisiana limited liability company, by its President and undersigned attorneys, pursuant to authority granted by its Board of Directors, and Immigration Customs & Enforcement, by Special Agent in Charge Ken Smith, and the United States of America, by United States Attorney W. Walter Wilkins.

WHEREAS, on October 7, 2008, ICE agents, in concert with other federal and state authorities, conducted a work site enforcement action at the Greenville Plant's processing facility, and detained 330 unauthorized workers working at the plant at that time; and

WHEREAS, the USAO DSC has and is prosecuting various managers, supervisors, and employees of Columbia Farms for criminal offenses associated with the employment of unauthorized workers at the Greenville Plant; and

WHEREAS, Columbia Farms accepts responsibility for its actions associated with the employment of unauthorized workers at the Greenville Plant and seeks to cooperate fully with the Department of Justice, ICE, and other federal agencies in the enforcement of federal employment and immigration laws at all Company facilities; and

3

WHEREAS, the Company understands that its compliance with federal employment and immigration laws must be applied consistently and fairly so as to comply with all applicable anti-discrimination laws; and

WHEREAS, the Department of Justice, ICE, and the Company seek to prevent and deter the employment of unauthorized workers at the Company, and seek a continuation of the positive company-wide compliance efforts the Company initiated prior and subsequent to the ICE work-site enforcement action at the Greenville Plant;

ACCORDINGLY, the Department of Justice and the Company, by its President and undersigned attorneys, pursuant to authority granted by its Board of Directors, enter into this Deferred Prosecution and Settlement Agreement to memorialize and reflect the aforementioned goals and commitments. In furtherance of these goals and commitments, the Department of Justice and the Company agree as follows:

## STATEMENT OF FACTS

1. The relevant time period for the events recited herein, as defined above, is from in or about 2000, continuing through in or about October 2008.

2. Columbia Farms, located in the District of South Carolina, is a wholly owned subsidiary of Nash Johnson and Son's Farms, Inc., a privately owned corporation with headquarters in Rose Hill, North Carolina.

3. During the relevant time period, Barry Cronic was the Complex Manager in charge of operations at the Greenville Plant and Elaine Crump was the Director of Human

4

Resources dealing with the hiring and employment of personnel for the Greenville plant. At various times during the relevant time period, unauthorized workers were hired and maintained employment at the Greenville Plant.

4. Columbia Farms recognizes and acknowledges that it could have implemented a more rigorous compliance training program for its management and human resources personnel concerning the review of identification documents used in the employment and re-verification process. Columbia Farms understands that such a program could have reduced the number of unauthorized workers who were hired and maintained employment through October 7, 2008.

5. On October 7, 2008, ICE agents, aided by other federal and state authorities, conducted a work-site enforcement action at the Greenville Plant and detained 330 unauthorized workers.

6. An analysis of December 2007 payroll information from the Greenville Plant suggests that approximately 729 unauthorized workers were employed at the plant at that time. The investigation developed evidence that certain of Columbia Farms managers and human resources employees were aware of, or should have known that a portion of these employees were unauthorized to work in the United States.

7. During the relevant time period, the Social Security Administration ("SSA") notified Columbia Farms of irregularities in social security numbers used by certain of its workers.

## ACCEPTANCE OF RESPONSIBILITY

8.    The USAO DSC maintains that it would be able to prove that the two management employees of Columbia Farms named in the related criminal indictment are guilty of the employment-related conduct detailed above and, as a result of these employees' conduct, as set forth in the Statement of Facts, the Company offers and agrees to settle and does settle any and all civil, criminal, or administrative claims assessable by the United States based upon the conduct described in the Statement of Facts, the criminal indictment, and any and all investigations of hiring and employment practices at Company facilities, be they administrative, civil, or criminal, during the relevant time period for the sum of $1,500,000.00.

9.    Columbia Farms acknowledges responsibility for the conduct of its management and employees as set forth in the Statement of Facts. Columbia Farms does not condone criminal conduct and has taken significant steps to prevent such conduct from occurring in the future.

10.    The Company agrees to remediate the conduct described above by entering into this Agreement and by, among other things, continuing the proactive, significant, and remedial actions that it has taken to date and that within thirty (30) days of this Agreement (unless where a time period is otherwise noted) it will establish and maintain, for a minimum period of twenty-four (24) months from the date of this Agreement, the following remedial measures, except to the extent that the

6

Company has already implemented and is maintaining any of the remedial measures listed below:

## The Company's Compliance Program

(a)     The adoption and maintenance of a comprehensive, risk-based Compliance Program;

(b)     The designation of a full-time Compliance Officer who will ensure the Company's compliance under this section of the Agreement;

(c)     The establishment of procedures to ensure periodic, but no more than annual, review of the Compliance Program by the Board of Directors or senior management of the Company;

(d)     Such Compliance Program shall include annual employee certifications for employees engaged in the hiring process, following the terms of the Handbook for Employers, provided by U.S. Citizenship and Immigration Services;

## Remedial Actions Regarding Hiring, SSN, and I-9 Verifications

(e)     Use of the Department of Homeland Security's "E-Verify" employment eligibility verification program for all hiring;

(f)     Use of the SSA's Social Security Number Verification Service ("SSNVS") to conduct a batch run of the social security numbers of all current employees within forty-five (45) days of this Agreement, and, consistent

7

with State and Federal law, resolving any negative results in a timely manner. Thereafter, the Company shall use SSNVS to conduct annual reviews of all of its new hires, resulting in corrective reports, in accordance with instructions provided to corporate compliance counsel, to the SSA and the Internal Revenue Service, as necessary each year;

(g)    Use, when necessary, of the Spanish-language instructions for completing the Form I-9 (Employee Eligibility Verification Form), available at http://.www.uscis.goc/i-9, ensuring, in accordance with Federal law, that the English Form I-9 is completed by all applicants;

(h)    Within sixty (60) days of the execution of this Agreement, establish with the assistance of the Company's corporate compliance counsel, an internal training program, with annual updates, to instruct employees on how to: properly and legally use "E-Verify" and complete the Form I-9; use enhanced detection techniques to identify fraudulent documents in the Form I-9 process; and execute the Form 1-9 with safeguards against unlawful discrimination. The Company shall thereafter permit the I-9 and "E-Verify" processes to be conducted only by individuals who have received the training described in this paragraph, and include a secondary review as part of each employee's verification to minimize the potential for a single individual to subvert the process;

8

(i)     The use of an external auditing firm to conduct annual Form I-9 audits, delivering, in a timely manner, a signed copy of such audits, under penalties of perjury, to ICE at the office or offices they designate;

**Remedial Actions Regarding SSA Mismatch Notifications**

(j)     The establishment and maintenance of a protocol, with the assistance of the Company's corporate compliance counsel, to respond to "no-match" letters received from the SSA by the Company;

**Remedial Actions Regarding Third Parties**

(k)     Agreements with contractors and subcontractors to provide labor services to the Company, if any, shall include provisions requiring the contractor or subcontractor:

   (i)     to comply with all State and Federal immigration laws;

   (ii)    require, when reasonable, use of DHS's E-Verify program to verify the employment eligibility of its workers; and

   (iii)   take reasonable steps to ensure that all employees provided to the Company are authorized to work under Federal law.

## REPORTING OBLIGATIONS

11.    Within thirty (30) days of this Agreement, the Company shall establish a self-reporting procedure for timely reporting to ICE of the discovery of or allegations of credible criminal violations of federal immigration laws or

9

regulations relating to the Company or its personnel. The Department of Justice will not criminally prosecute the Company for any acts or conduct voluntarily disclosed to ICE pursuant to this Agreement if the Company voluntarily, truthfully, completely and timely discloses all information and knowledge that the Company has with regard to such discoveries of or allegations of criminal violations of immigration laws and regulations.

12.     The Company will cause its outside corporate compliance counsel to annually review its compliance activities as set forth in this Agreement and certify under penalties of perjury to the USAO DSC whether the Company has been in substantial compliance with the commitments made throughout this Agreement.

13.     The USAO DSC, ICE, and their investigative entities shall have the authority to take reasonable steps, as necessary, to be fully informed about the Company's compliance activities under this Agreement. Within seventy-two (72) hours of receiving written notification, the Company shall grant the Department of Justice, ICE, and their investigative entities access to and the right to make copies of any and all books, records, accounts, correspondence, files and any other documents or electronic records, including e-mails, related only to the hiring process or compliance with Federal employment and immigration law. Such right of access and inspection shall be subject to any and all applicable privileges held by the Company.

### NON-PROSECUTION

14.    In consideration of Company's (a) acceptance of responsibility as acknowledged

herein; (b) cooperation to date and agreement to continue to cooperate with the USAO

DSC, ICE and other government agencies;(c) agreement to pay the monetary forfeiture

and payment set forth in paragraph 6 and 21; (d)implementation of remedial measures and

compliance efforts as set forth in paragraphs 10-13; (e) agreement to self-report

discoveries or allegations of violations immigration laws and regulations; and (f)

agreement otherwise to comply with all the terms of this Agreement, the USAO DSC

agrees that except as provided in paragraphs 14-20 below, it will not prosecute Columbia

Farms for the conduct which is described in the Statement of Facts above, for so long as

this Agreement remains effect.


### VIOLATION OF AGREEMENT

15.    The Company agrees and acknowledges that if it knowingly, intentionally,

willfully, and materially breaches the terms and conditions of this Agreement, the

USAO DSC reserves the right in its sole discretion to prosecute the pending

criminal case, Number 6:08-683 in the United States District Court for the District

of South Carolina, using the above Statement of Facts as the basis for prosecuting

Columbia Farms with violating provisions of federal criminal law.

16.    The Company expressly agrees that it shall not, through its present or future

11

attorneys, Board of Directors, agents, or officers, make any public statement materially contradicting any statement contained in the above Statement of Facts. Any such materially contradictory public statement by Columbia Farms, its present or future attorneys, Board of Directors, agents, or officers may constitute a material breach of this Agreement as governed by paragraph 20 of this Agreement, and Columbia Farms may thereafter be subject to prosecution pursuant to this Agreement. The USAO DSC shall have the sole discretion to decide whether any public statement by any such person materially contradicting a fact contained in the Statement of Facts will be imputed to Columbia Farms for the purpose of determining whether Columbia Farms has materially breached this Agreement, except that any decision made by the USAO DSC pursuant to this paragraph shall be subject to review by the USAO DSC in accordance with the process and standards set forth in paragraphs 18 and 19. Should the USAO decide at its sole discretion to notify Columbia Farms of a public statement by any such person that, in whole or in part materially contradicts a statement contained in the Statement of Facts, Columbia Farms may avoid breach of this Agreement by publicly repudiating such statement within forty-eight (48) hours after such notification. Columbia Farms agrees that in the event future criminal proceedings are brought under this Agreement in accordance with Paragraphs 19 and 20 of this Agreement, Columbia Farms will not contest the admissibility of the Statement of Facts in any such proceedings.

17.    Consistent with Columbia Farm's obligations as set forth above, Columbia Farms

shall be permitted to raise and support defenses and assert and support affirmative defenses or claims in civil and administrative proceedings, if any occur, relating to the matters set forth in the Statement of Facts.

18.    The Company has fully cooperated and agrees to continue fully cooperating with ICE and the USAO DSC, and with any other agency designated by the USAO DSC, regarding any Federal employment or immigration matter at the Greenville Plant or the Columbia Plant about which Columbia Farms has knowledge. Columbia Farms agreement to cooperate is limited only to matters or investigations of the Greenville Plant or the Columbia Plant. Columbia Farms' agreement to cooperate shall extend until the completion of this Agreement and only includes investigations by ICE, the USAO DSC, and any other agency designated by the USAO DSC, relating to the employment of unauthorized workers, including any investigations or prosecutions of others, at the Greenville Plant or the Columbia Plant.

19.    The Company agrees that its cooperation, as contained in Paragraph 18 above, shall include, but is not limited to, the following:

(a)    Completely and truthfully disclosing all information as may be requested by ICE or the USAO DSC with respect to hiring and employment activities at the Greenville Plant or the Columbia Plant of Columbia Farms, and its present and former officers, agents, and employees, provided however, that Columbia Farms shall not be required to disclose legal advice given by counsel to the Company, or its Board of Directors;

13

(b)    Using its best efforts to make available its employees to provide information or testimony regarding conduct at the Greenville Plant or the Columbia Plant as requested by ICE or the USAO DSC, including sworn testimony before a federal grand jury or in federal trials, as well as interviews with federal law enforcement authorities. Cooperation under this paragraph will include identification of witnesses who, to Columbia Farms' knowledge, may have material information regarding any Federal employment or immigration matters being investigated at the Greenville Plant or the Columbia Plant;

(c)    Using its best efforts to make available for interviews, or for testimony, present or former Columbia Farms officers, directors, and employees as requested by the USAO DSC regarding any Federal employment or immigration matters being investigated at the Greenville Plant or the Columbia Plant; and

(d)    Providing testimony and other information deemed necessary by ICE or the USAO DSC or a court to identify or establish the original location, authenticity, or other evidentiary foundation necessary to admit into evidence documents in any criminal or other proceeding pertaining to the Greenville Plant or the Columbia Plant as requested by the USAO DSC.

20.    Should the USAO DSC determine that Columbia Farms has committed a knowing, intentional, willful, and material breach of any provision of this Agreement, the USAO DSC shall provide written notice to Columbia Farms addressed to its

14

counsel, Henry W. Jones, Esq., Jordan Price Wall Gray Jones & Carlton, PLLC, 1951 Clark Avenue, Raleigh, North Carolina, 27605, with a copy to Columbia Farms, or to any successor that Columbia Farms may designate, of the alleged breach and provide Columbia Farms with a thirty (30) day period in which to request to make a presentation to the USAO DSC to demonstrate that no breach has occurred, or, to the extent applicable, that the breach was not knowing, intentional, willful, and material or has been cured. The parties hereto expressly understand and agree that should Columbia Farms fail to request an audience with the United States Attorney within a thirty (30) day period, it shall be conclusively presumed that Columbia Farms is in knowing, intentional, willful, and material breach of this Agreement. The parties further understand and agree that the USAO DSC's exercise of discretion under this paragraph is not subject to review in any court or tribunal outside the Department of Justice. In the event of a knowing, intentional, willful, and material breach of this Agreement that results in a prosecution of Columbia Farms, such prosecution may be premised upon any information provided by or on behalf of Columbia Farms to the USAO DSC or other government agency at any time, unless otherwise agreed when the information was provided.

21.   In the case of a knowing, intentional, willful, and material breach of this Agreement, any prosecution of Columbia Farms relating to the employment of unauthorized workers or the making of false statements, or any crime arising from either of these categories, including case Number 6:08-683, that is not time-barred

by the applicable statute of limitations as of the date of this Agreement may be commenced against Columbia Farms. The Company's waiver of the statute of limitations for any misconduct previously stated in this paragraph is knowing and voluntary and in express reliance on the advice of counsel.

## DEFERMENT AND SETTLEMENT

22.  As a result of the conduct of Columbia Farms' managers and employees, as set forth in the Statement of Facts, the Company offers and agrees to settle and does settle any and all civil, criminal, and administrative claims assessable by the United States based upon the conduct described in the Statement of Facts, the criminal indictment, and any and all employment or immigration related investigations, be they administrative, civil, criminal, of the Company, during the relevant time period and continuing through the date of execution of this Agreement, for the sum of $1,500,000.00. This sum shall be paid on a semi-annual basis over the course of twenty-four (24) months from the date of execution of this Agreement. It is understood that the payment of all or any part of this sum is in settlement of a disputed claim and the company admits no liability with respect thereto.

The sum of $1,500,000.00, shall be forfeited to resolve all potential corporate criminal liability against the Company and to resolve all civil or administrative actions against the Company with the Department of Justice and ICE.

This financial forfeiture is agreed to pursuant to Title 18, United States Code,

16

Section 982(a)(6)(A), for criminal violations related to the employment of

unauthorized workers as set forth in Title 8, United States Code, Sections

1324a(a)(1)(A), 1324a(a)(2), and for ICE work site Administrative violations.

The total sum of $1,500,000.00., shall be allocated to and deposited into the

Department of the Treasury Asset Forfeiture Fund in accordance with Title

31United States Code, Section 9703.1.

   To the extent that the Company is entitled to any notice, the Company

agrees to waive any and all filing requirements; notice requirements; and

statutes of limitation established by law, including but not limited to those

of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), or the

Constitution; and agrees not to file a claim or otherwise contest any forfeiture

proceeding related to the above-stated sum.

Any violation of the Company's financial commitment reflected in this

paragraph will constitute a material breach and subject the Company to

criminal prosecution.

23.   In consideration of Columbia Farms' remedial actions to date and its willingness

    to:

    (a)    acknowledge that it is responsible for the acts of its employees acting within

        the scope of their employment;

    (b)    continue its cooperation with ICE and the Department of Justice and other

        governmental agencies;

    (c)    demonstrate its future good conduct and full compliance with the federal

17

employment laws; and

(d)     consent to payment of the monetary forfeiture set forth in paragraph 21,

the USAO DSC shall defer for a period of twenty-four (24) months any criminal prosecution of the Company pursuant to paragraph 1, criminal case, Number 6:08-683, and any Company conduct which occurred before the date of this agreement.

24.    The USAO DSC agrees that if the Company is in full compliance with all of its obligations under this Agreement for twenty-four (24) months from the date of its signing, this Agreement shall expire, and the USAO DSC will seek dismissal of criminal case, Number 6:08-683 with prejudice. Should the USAO DSC determine during the term of this Agreement that the Company has committed a knowing, intentional, willful, and material breach of this Agreement, or has committed any federal crime commenced subsequent to the date of this Agreement, Columbia Farms shall, in the sole discretion of the USAO DSC, be subject to prosecution for criminal case, Number 6:08-683 and other federal crimes of which the USAO DSC has knowledge and for which the conduct which serves the basis for the prosecution occurred after the date of this Agreement, unless such conduct is exempted from prosecution under this Agreement.

25.    This Agreement shall not be construed as a waiver of limitation of any defense otherwise available to Columbia Farms in any subsequent litigation. In addition, no part of this Agreement shall create a private cause of action or confer any right to any third party for violation of any federal statute.

26. This Agreement is not to be construed as a prior conviction or prior sentence of the Company for the purposes of computing criminal history under the Federal Sentencing Guidelines.

27. Except in the event of a knowing, intentional, willful, and material breach of this Agreement, all investigations and criminal prosecutions relating to the matters set forth in the Statement of Facts or related to the Company that have been, or could have been, conducted by the Department of Justice prior to the date of this Agreement shall not be pursued further as to the Company and individual employees operating in the course of their employment.

28. The Company agrees that, if it sells or merges all or substantially all of its business operations as they exist as of the date of this Agreement to or into a single purchaser or group of affiliated purchasers during the term of this Agreement, it shall include in any contract for sale or merger a provision binding the purchaser or successor to the obligations described in this Agreement.

29. It is understood that this Agreement is binding on the Company, the Department of Justice, and ICE, but specifically does not bind any other federal agencies, or any state or local law enforcement or licensing authorities, although the Department of Justice shall bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of other federal agencies, state and local law enforcement, or licensing authorities, if requested by the Company or its attorneys. This Agreement also excludes any natural persons.

30. The Company and the Department of Justice agree that this Agreement may be

19

publicly disclosed.

31.    This Agreement sets forth all the terms of the agreement between the Company, ICE, and the Department of Justice. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by the USAO DSC, the Company's attorneys, and a duly authorized representative of the Company.

32.    Columbia Farms hereby warrants and represents that its owners; Nash Johnson and Sons Farms, Inc, and Nash Johnson and Sons Farms, Inc, Board of Directors, House of Raeford Farms, Inc. and House of Raeford Farms, Inc.'s Board of Directors, and House of Raeford Farms of Louisiana, LLC and House of Raeford Farms of Louisiana, LLC's Board of Directors has duly authorized, in a specific resolution, the execution and delivering of this Agreement by the aforementioned entities, and that the person signing the Agreement has authority to bind Columbia Farms, House of Raeford Farms, Inc., and House of Raeford Farms of Louisiana, LLC.

33.    This agreement may be executed in counterpart and facsimile or pdf signature shall be deemed to be and have the same force and affect as an original signature.

On Behalf of the United States:

_November 2_____, 2009
Date

_W. WALTER WILKINS_
W. WALTER WILKINS
UNITED STATES ATTORNEY

On Behalf of Immigration & Customs Enforcement:

November 2nd, 2009
_____
Date

_____
Ken Smith
SAC, Immigration & Customs Enforcement

On Behalf of Columbia Farms:

_____, 2009
Date

_____
President,
COLUMBIA FARMS

_____, 2009
Date

_____
John Simmons, Esq.
Attorney for COLUMBIA FARMS

On Behalf of House of Raeford Farms, Inc.:

_____, 2009
Date

_____
President,
House of Raeford Farms, Inc

_____, 2009
Date

_____
Henry W. Jones, Esq.
Attorney for House of Raeford Farms,
Inc

On Behalf of House of Raeford Farms of Louisiana, LLC.

_____, 2009
Date

_____
President,
House of Raeford Farms of Louisiana, LLC

_____, 2009
Date

_____
Henry W. Jones, Esq.
Attorney for House of Raeford Farms of
Louisiana, LLC

21

_____, 2009
Date

Ken Smith
SAC, Immigration & Customs Enforcement

On Behalf of Columbia Farms:

_____, 2009
Date

President,
COLUMBIA FARMS

_____, 2009
Date

John Simmons, Esq.
Attorney for COLUMBIA FARMS

On Behalf of House of Raeford Farms, Inc.:

_____, 2009
Date

President,
House of Raeford Farms, Inc

_____, 2009
Date

Henry W. Jones, Esq.
Attorney for House of Raeford Farms,
Inc

On Behalf of House of Raeford Farms of Louisiana, LLC.

_____, 2009
Date

President,
House of Raeford Farms of Louisiana, LLC

_____, 2009

21

_____, 2009
Date

Ken Smith
SAC, Immigration & Customs Enforcement


On Behalf of Columbia Farms:

November 2, 2009
Date

President,
COLUMBIA FARMS


_____, 2009
Date

John Simmons, Esq.
Attorney for COLUMBIA FARMS


On Behalf of House of Raeford Farms, Inc.:

November 2, 2009
Date

President,
House of Raeford Farms, Inc

November 2, 2009
Date

Henry W. Jones, Esq.
Attorney for House of Raeford Farms, Inc


On Behalf of House of Raeford Farms of Louisiana, LLC.

November 2, 2009
Date

President,
House of Raeford Farms of Louisiana, LLC

November 2, 2009

21

Date                                    Henry W. Jones, Esq.
                                        Attorney for House of Raeford Farms of
                                        Louisiana, LLC

---

22